**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| LOUISIANA MUNICIPAL POLICE<br>  EMPLOYEES' RETIREMENT SYSTEM,<br><br>      Plaintiff,<br><br>v.<br><br>CONTINENTAL RESOURCES, INC.,<br>  HAROLD G. HAMM, H. R. SANDERS, JR.,<br>  JOHN T. McNABB II, MARK E. MONROE,<br>  ELLIS L. McCAIN,  ROBERT J. GRANT,<br>  JEFFREY B. HUME, and WHEATLAND<br>  OIL INC.,<br><br>      Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) NO. CIV-12-667-D <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**<u>ORDER</u>**

     Before the Court is the Plaintiff's Motion for a Temporary Restraining Order ("TRO")[Doc. No. 11]. Defendants filed timely responses to the motion, and Plaintiff filed a reply. On July 30, 2012, the Court conducted a hearing on the motion. All parties appeared by counsel.

     Pursuant to Fed. R. Civ. P. 65(b), Plaintiff seeks a TRO to prevent an August 10, 2012 vote of the shareholders of Defendant Continental Resources, Inc. ("Continental") to determine whether they will approve a proposed acquisition by Continental of assets owned by Defendant Wheatland Oil, Inc. ("Wheatland"). Plaintiff, a minority shareholder in Continental, asks the Court to enjoin the vote until a ruling can issue on Plaintiff's anticipated motion for a preliminary injunction.[1]

<u>I. Background:</u>

---

[1] Although the Complaint was filed on June 12, 2012 and the TRO motion was filed July 16, Plaintiff did not file a motion for a preliminary injunction until July 30, 2012. The Court file reflects the motion for preliminary injunction and separate motion for expedited discovery [Doc. Nos. 51 and 52] were electronically filed at approximately 1:00 p.m. on July 30. During the TRO hearing, which commenced at approximately 1:30 p.m., the Court and counsel for the defendants had not yet received these motions.

Plaintiff filed this action on June 12, 2012, alleging, *inter alia,* that the defendants have breached their fiduciary duties to minority shareholders in connection with Continental's proposed acquisition of certain Wheatland assets for a price of approximately $340 million. Defendant Harold Hamm ("Hamm") is the majority shareholder and Chief Executive Officer of Continental, and owns approximately 68 per cent of Continental's stock. Wheatland is owned by Hamm and Defendant Jeff Hume ("Hume"), who is also Continental's Vice Chairman of Strategic Growth Initiatives and its former President and Chief Operating Officer. Hamm owns 75 per cent of Wheatland, and Hume owns 25 percent. The assets to be purchased in the proposed sale consist of Wheatland's five to ten per cent interests in oil and gas properties located in portions of the Bakken field in North Dakota and Montana and other properties in Oklahoma and Mississippi. The evidence presented by the parties reflects that the proposed transaction is not an acquisition of the stock of Wheatland, but is a purchase of Wheatland assets consisting of all its interests in the above-described oil and gas properties, the majority of which are currently owned by Continental (the "Assets").

Plaintiff is a Louisiana public retirement system which has invested in Continental stock, and currently owns shares which it values as worth more than $75,000.00.[2] Continental is an oil and gas exploration and production company, and its stock is publicly traded on the New York Stock Exchange ("NYSE"). Pursuant to Securities and Exchange Commission ("SEC") regulations, NSYE rules, and the terms of the purchase and sale agreement between Continental and Wheatland, the proposed acquisition is an interested party transaction, which requires the approval of a majority of Continental's minority shareholders, including Plaintiff. In effect, this means that Continental must receive approval from a majority of the issued and outstanding Continental shares held by

---

[2]The number of Continental shares owned by Plaintiff is not disclosed in the Complaint or the TRO motion.

shareholders other than members of Continental's Board of Directors, its executive officers, Hamm and his affiliates, and Hume and his affiliates.

On July 9, 2012, Continental issued a definitive proxy statement to its shareholders in which it presented the proposal for a shareholder vote to be conducted on August 10, 2012. A copy of the July 9, 2012 proxy statement ("Proxy") is submitted as Continental Exhibit 2. The background leading up to the proposed acquisition of the Assets is explained in detail in the Proxy. Although that background need not be repeated in this Order, a summary is important to understanding the transaction and the nature of Plaintiff's claims.

In November of 2010, Wheatland asked Continental if it would be interested in purchasing the Assets. At that time, Continental was interested in adding to its ownership of properties in the Bakken field, which had been highly successful. In November of 2011, Continental's Board of Directors voted to consider Wheatland's proposal,[3] and it created a special committee, composed of members of Continental's Audit Committee, to determine whether to pursue the transaction and, if so, to negotiate an agreement. Defendants H.R. Sanders, Jr., John T. McNabb II, Mark E. Monroe, Ellis L. McCain, and Robert J. Grant were the members of this committee (the "Special Committee"). To assist it in carrying out its responsibilities, the Special Committee retained a law firm, Weil, Gotshal & Manges ("Weil"), and a financial advisor, Evercore Group, L.L.C. ("Evercore").

On February 3, 2012, Hume offered to sell the Wheatland Assets to Continental for $385 million in Continental's common stock or a higher price in cash. At the time, Wheatland valued the Assets at $350 million to $425 million. As explained in detail at pages 24 through 29 of the

---

[3] It is not disputed that Hamm abstained from this vote by Continental's Board of Directors.

Proxy, the Special Committee conducted numerous meetings in February and March of 2012, and it engaged in negotiations with Hume regarding the details of a potential purchase of the Assets. Evercore conducted an analysis to determine the fairness to Continental of the proposal, and the Special Committee met with Evercore several times to discuss the details of the prospective acquisition. The Special Committee also received information provided by Wheatland's financial advisor, RBC Capital Markets, LLC ("RBC"). The Proxy explains in detail the Special Committee's separate communications with Weil, Evercore, and RBC, as well as the topics discussed. Continental Ex. 2 at pp. 24-28. Additionally, the Proxy explains that the Special Committee met with Evercore several times to review financial data regarding Wheatland, including valuation of the Assets, anticipated future expenditures, and reserve data. *Id.* at p. 26. The Proxy explains the factors considered by the Special Committee in evaluating the proposed transaction and a potential purchase price. *Id.*

Also explained in the Proxy is the fairness opinion issued by Evercore, and a copy of its opinion is attached as Appendix A to the Proxy. The Proxy sets out the bases for Evercore's valuation of the net assets of Wheatland, including the actions taken by Evercore in performing its analysis. Continental Ex. 2 at p. 31-38.

Included in the Proxy is a description of Wheatland and its assets, including a description of the developed and undeveloped acreage owned, the proved reserves and proved wells and locations, and production data for wells included in the Assets. Continental Ex. 2, at pp. 14-15. Also included are tables showing production quantities for the previous three calendar years and revenues and costs for those years. *Id.* at p. 15.

The Proxy reports that, after a series of discussions and negotiations, the Special Committee

agreed on March 26, 2012 to submit for Board and, ultimately, shareholder approval, a proposed transaction which authorized a purchase and sale agreement whereby Continental would purchase the Assets for a price of $340 million to be paid with shares of Continental stock. Proxy, Continental Ex. 2, p. 29. Continental Ex. 2, pp. A-1 through A-3. On March 27, 2012, the Special Committee presented its recommendation to the disinterested Continental Board members. The Board approved the agreement on that date, and authorized its submission to a vote of the minority shareholders for approval. *Id.*

The proposed transaction was announced by Continental in a March 28, 2012 press release. On April 3, 2012 Continental filed its first Preliminary Proxy disclosing the details of the transaction, and it publicly filed with the SEC revised preliminary proxies on May 8, 2012 and on June 4, 2012. The SEC reviewed and cleared both the initial and final or definitive proxy.

On July 9, 2012, Continental filed the Proxy, which constitutes the definitive proxy statement and recommends approval by the shareholders of the proposed acquisition of the Assets. The Proxy schedules the shareholder vote for August 10, 2012.

According to Plaintiff, after the prospective transaction was announced in March, it contacted Continental to request additional information regarding the transaction. Continental declined to provide additional information. Plaintiff's counsel stated during oral argument that Plaintiff requested information on subsequent occasions, but did not receive the information.

On June 12, 2012, Plaintiff filed this lawsuit as a putative class action suit on behalf of Continental's minority shareholders, alleging that the defendants breached their fiduciary duties to the minority shareholders in connection with the proposed acquisition of Wheatland's assets. Plaintiff alleges, *inter alia*, that the transaction is designed to benefit Hamm and Hume to the

detriment of Continental and that they effectively control the vote of the minority shareholders. Plaintiff alleges Hamm controls shares owned by two irrevocable trusts for the benefit of Hamm's children and contends these shares should be excluded from the shareholder vote. Plaintiff also contends the proxy materials filed as of the date of the lawsuit omit disclosures which are material to the minority shareholders' ability to cast an informed vote on the proposed acquisition of the Assets.

Although the Complaint contained a reference to injunctive relief, Plaintiff did not file the motion for a TRO until July 16, 2012. At that time, Plaintiff also requested leave to conduct discovery pending the resolution of a preliminary injunction which it had not yet filed. By Order of July 24, 2012 [Doc. No. 33], the Court denied the motion for expedited discovery, set the TRO for hearing on July 30, 2012, and set deadlines for the submission of additional briefs. As indicated, *supra,* Plaintiff did not file a motion for preliminary injunction until approximately 1:00 p.m. on July 30.

In the TRO motion, Plaintiff asks the Court to enjoin the August 10, 2012 shareholder vote, asserting some, but not all, of the allegations in the Complaint. Defendants filed objections, and Plaintiff timely filed a reply brief. In the reply brief and at the oral argument, Plaintiff sought a TRO only on the basis that the Proxy failed to disclose sufficient information regarding the Evercore financial opinion that the proposed transaction is fair to Continental. Counsel for Plaintiff expressly stated during the July 30 hearing that Plaintiff was not advancing the other bases for a TRO set out in the July 16, 2012 motion, acknowledging that it lacked sufficient evidence to show the elements required to obtain a TRO on those bases. Plaintiff's counsel also announced that, just prior to the hearing, Plaintiff filed a motion for a preliminary injunction and a renewed motion for expedited

discovery to permit it to conduct discovery from the date of the issuance of a TRO until the preliminary injunction motion could be heard.

II. Analysis:

The purpose of a TRO is to preserve the *status quo* between the parties and prevent irreparable harm pending an evidentiary hearing regarding whether injunctive relief should be ordered. *Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 439 (1974). The requirements for issuance of a TRO are essentially the same as those for a preliminary injunction, and require the moving party to establish that (1) there is a likelihood that the movant will succeed on the merits of its claim; 2) the movant will suffer irreparable injury unless the injunction issues; (3) the threatened injury...outweighs whatever damage the proposed injunction may cause the opposing party; and (4) the injunction, if issued, would not be adverse to the public interest. *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1188 (10th Cir. 2003).

"Preliminary injunctions are extraordinary equitable remedies designed to 'preserve the relative positions of the parties until a trial on the merits can be held.'" *Westar Energy, Inc. v. Lake*, 552 F. 3d 1215, 1224 (10th Cir. 2009) (quoting *University of Texas v. Camenisch*, 451 U. S. 390, 395 (1981)). "[B]ecause a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal." *Port City Properties v. Union Pacific R. Co.*, 518 F. 3d 1186, 1190 (10th Cir. 2008).

The Court has considered the evidence, the arguments of counsel, and the applicable law, and concludes as follows with respect to the requisite elements as applied to this case.

    A. Likelihood of success on the merits:

To demonstrate a likelihood of success on the merits of its claim, a plaintiff is required "to

present 'a prima facie case showing a reasonable probability that [it] will ultimately be entitled to the relief sought.' " *Salt Lake Tribune Pub. Co., LLC v. AT & T Corp*. 320 F. 3d 1081, 1100 (10th Cir. 2003) (quoting *Autoskill v. Nat'l Educ. Support Sys.*, 994 F.2d 1476, 1487 (10th Cir.1993)). The movant is not required to show there is an "absolute certainty" that it will prevail on the merits. *Autoskill*, 994 F. 2d at 1487. Nor is it required to show an "overwhelming likelihood" of success. *Koerpel v. Heckler*, 797 F. 2d 858, 867 n. 5 (10th Cir. 1986) (citing *Atchison, Topeka, and Santa Fe. Railway Co. v. Lennen*, 640 F. 2d 255, 261 (10th Cir. 1981)).

In certain cases, the Tenth Circuit applies a modified standard for showing a likelihood of success on the merits. Under the modified standard, if a movant establishes that the first three requirements "tip strongly" in his favor, the movant may satisfy the likelihood of success on the merits element by showing "that questions going to the merits are so serious, substantial, difficult, and doubtful as to make the issue ripe for litigation and deserving of more deliberate investigation." *Davis v. Mineta*, 302 F. 3d 1104, 1111 (10th Cir. 2002); *Fed. Lands Legal Consortium ex rel. Robart Estate v. United States*, 195 F. 3d 1190, 1195 (10th Cir. 1999). The modified test does *not* apply, however, where the requested relief is among the "disfavored" categories of injunctions, including those which: 1) disturb the status quo; 2) are mandatory as opposed to prohibitory; or 3) afford the movant substantially all the relief he may recover at the conclusion of a full trial on the merits. *See O Centro Espirta Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F. 3d 973, 975 (10th Cir. 2004) (per curiam), *aff'd sub. nom.*, 546 U.S. 418 (2006). As set forth more fully, *infra,* the Court concludes that the modified standard does not benefit Plaintiff in this case, as the other traditional

elements do not "tip strongly" in its favor.[4]

During oral argument on the TRO in this case, Plaintiff expressly stated that the only basis for seeking temporary injunctive relief is its contention that the definitive proxy fails to disclose sufficient facts underlying the opinion of Evercore that the proposed transaction is fair to Continental. Specifically, Plaintiff argues that the proxy materials fail to sufficiently disclose the basis for Evercore's opinions regarding the value of the Wheatland reserves and the projected price of the oil and gas that might be realized from the acquisition of the Assets by Continental. Defendants argue Plaintiff cannot show a likelihood of success on the merits of this contention because there is no duty to disclose this type of underlying data in a proxy statement and, in any event, the definitive proxy contains detailed information reflecting the bases for Evercore's opinion.

Corporate directors are "'under a fiduciary duty to disclose fully and fairly all material information within the board's control when it seeks shareholder action.'" *Globis Partners, L.P. v. Plumtree Software, Inc.,* 2007 WL 4292024, at *10 (Del. Ch. Nov. 30, 2007) (unpublished opinion) (quoting *Stroud v. Grace*, 606 A.2d 75, 84 (Del. 1992)).[5] "'The essential inquiry is whether the alleged omission or misrepresentation is material.'" *Id.* (quoting *Arnold v. Society for Savings Bancorp, Inc.,* 650 A. 2d 1270, 1277 (Del. 1994)). However, the directors' duty to disclose is "not boundless," as "directors need only disclose information that is material." *In re CheckFree Corp. Shareholders Litigation,* 2007 WL 3262188, at *2 (Del. Ch. Nov. 1, 2007) (unpublished opinion)

---

[4]Arguably, the modified standard has no application here because a temporary injunction would essentially grant Plaintiff substantially all the relief Plaintiff seeks: the prevention of a shareholder vote on the existing Proxy.

[5]The parties agree that Oklahoma courts consider decisions of the Delaware courts persuasive authority on issues related to the construction of the Oklahoma General Corporation Act because it is based on Delaware's Corporations Act. *See Beard v. Love,* 173 P.3d 796, 802 (Okla. Civ. App. 2007).

(citing *Louden v. Archer-Daniels-Midland Co.,* 700 A.2d 135, 142 (Del. 1997)).

To constitute a material omission sufficient to establish liability, the information in question must "significantly alter" the "total mix of information made available." *In re Netsmart Techs., Inc. Shareholders Litigation,* 924 A.2d 171, 199 (Del. Ch. 2007); *Zirn v. VLI Corp.,* 621 A.2d 773, 778-79 (Del. 1993). "The burden of demonstrating a disclosure violation and of establishing the materiality of requested information lies with the plaintiffs." *In re CheckFree*, 2007 WL 3262188, at *2 (citing *In re Gen. Motors (Hughes) Shareholder Litigation,* 2005 WL 1089021, at * 13 (Del. Ch. May 4, 2005), *aff'd* 897 A.2d 162 (Del. 2006)).

In this case, Plaintiff does not contend that the Proxy contains misrepresentations, but argues only that it omits material information because it fails to disclose the details of the bases for Evercore's fairness opinion. As Defendant Continental points out in its brief, however, courts have rejected disclosure claims based on the failure to disclose underlying details supporting a fairness opinion. *Skeen v. Jo-Ann Stores, Inc.,* 750 A.2d 1170, 1173 (Del. 2000) (rejecting motion to enjoin a merger based on failure to disclose a summary of the methodologies used and ranges of values generated by the entity issuing a fairness opinion)."[Q]uibbles with a financial advisor's work simply cannot be the basis of a disclosure claim." *In re 3Com Shareholders Litigation*, 2009 WL 5173804, at *6 (Del. Ch. Dec. 18, 2009) (unpublished opinion). "Delaware law does not require disclosure of all the data underlying a fairness opinion such that a shareholder can make an independent determination of value." *Globis*, 2007 WL 4292024, at *13.

"'Omitted facts are not material simply because they might be helpful.'" *Id.*, at * 12 (quoting *Skeen*, 750 A.2d at 1174). Thus, a disclosure "that does not include all financial data needed to make an independent determination of fair value is not *per se* misleading or omitting a material fact.

The fact that the financial advisors may have considered certain non-disclosed information does not alter this analysis." *Id.* (citing *In re CheckFree,* 2007 WL 3262188, at *2). All that is required of a fairness opinion is an "adequate and fair summary" of the work resulting in the opinion. *In re CheckFree,* 2007 WL 3262188, at * 3.

Furthermore, where the proxy material provided to shareholders has been submitted to the SEC and approved, that decision is entitled to "some weight." *Deborah G. Mallow IRA Sep Investment Plan v. McClendon,* 2012 WL 2036748, at *3 (W.D. Okla. June 6, 2012) (unpublished opinion) (citing *McConnell v. Lucht,* 320 F.Supp. 1162, 1166 (S.D.N.Y. 1970)). Although the SEC's approval is not binding on the Court, "the fact that the proxy material passed muster before the SEC–while not a ruling on the merits of the statements–is of some importance on the issue of injunctive relief." *McConnell,* 320 F. Supp. at 1166. "In an area where the primary power of protection of investors is vested in the Commission, their failure to take a stronger position is of some weight, particularly on a motion of this sort for preliminary relief." *Sherman v. Posner,* 266 F. Supp. 871, 874 (S.D.N.Y. 1966).

Having considered in detail the evidence submitted by the parties, the Court finds that Plaintiff has not satisfied its burden of showing a likelihood of success on the merits of its omission claim. While Plaintiff submits decisions in which the courts have found potential liability for a corporation's failure to disclose material facts in connection with a request for shareholder approval, Plaintiff's authorities state the general rules of disclosure without applying them to the specific kind of claim of omission at issue here. As the foregoing discussion reflects, there is certainly a duty of disclosure, but the scope of that duty is limited by the nature of the information, and courts have consistently rejected the imposition of a duty to disclose specific, detailed data underlying a fairness

opinion.

Assuming, however, that such a duty existed, the Court finds the evidence shows that the Proxy contains sufficient detail to satisfy the duty to disclose. Contrary to Plaintiff's contention, the Proxy, as discussed above, sets out the reserve data, the costs of production, and the anticipated production from the Assets. In this regard, the projections regarding anticipated oil and gas prices in the future cannot, of course, be predicted with certainty. The same uncertainties associated with Wheatland's Assets also apply to Continental's own projections regarding the areas of production – the evidence shows that Continental already holds interests in the very same areas, and through this proposed transaction is simply acquiring more of what it already owns. Indeed, Continental's experience in this particular area, and thus the experience of its shareholders by extension, militates all-the-more in favor of the sufficiency of the treatment of these topics in the Proxy. Although additional, detailed disclosure may be helpful, it is simply not required under the circumstances present in this case.

Plaintiff has failed to show how the additional details which it seeks would be material to a shareholder's decision regarding approval or disapproval of the proposed acquisition, as it has not demonstrated that the alleged omitted particulars would significantly alter the total mix of information necessary to cast a vote on the proposal, and thus has not demonstrated a likelihood of success on the merits.

B.  Irreparable harm:

Even if the Court were to find that Plaintiff has demonstrated a likelihood of success on the merits, Plaintiff is required to show that it will suffer irreparable harm if the TRO does not issue. For the following reasons, the Court concludes that Plaintiff has failed to do so.

opinion.

Assuming, however, that such a duty existed, the Court finds the evidence shows that the Proxy contains sufficient detail to satisfy the duty to disclose. Contrary to Plaintiff's contention, the Proxy, as discussed above, sets out the reserve data, the costs of production, and the anticipated production from the Assets. In this regard, the projections regarding anticipated oil and gas prices in the future cannot, of course, be predicted with certainty. The same uncertainties associated with Wheatland's Assets also apply to Continental's own projections regarding the areas of production – the evidence shows that Continental already holds interests in the very same areas, and through this proposed transaction is simply acquiring more of what it already owns. Indeed, Continental's experience in this particular area, and thus the experience of its shareholders by extension, militates all-the-more in favor of the sufficiency of the treatment of these topics in the Proxy. Although additional, detailed disclosure may be helpful, it is simply not required under the circumstances present in this case.

Plaintiff has failed to show how the additional details which it seeks would be material to a shareholder's decision regarding approval or disapproval of the proposed acquisition, as it has not demonstrated that the alleged omitted particulars would significantly alter the total mix of information necessary to cast a vote on the proposal, and thus has not demonstrated a likelihood of success on the merits.

B.  Irreparable harm:

Even if the Court were to find that Plaintiff has demonstrated a likelihood of success on the merits, Plaintiff is required to show that it will suffer irreparable harm if the TRO does not issue. For the following reasons, the Court concludes that Plaintiff has failed to do so.

Although the concept of irreparable harm is not easily defined, the movant must identify an injury that is "both certain, great, actual and not theoretical." *See Heideman*, 348 F. 3d at 1189; *accord Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1250 (10th Cir.2001). A movant "satisfies the irreparable harm requirement by demonstrating 'a significant risk that he or she will experience harm that cannot be compensated after the fact by monetary damages.'" *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1210 (10th Cir. 2009) (quoting *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1258 (10th Cir.2003)). According to the Tenth Circuit, "a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.,* 356 F. 3d 1256, 1260 (10th Cir. 2004)(citations omitted).

"Regardless of the nature of the injury, the party seeking injunctive relief must show that 'the injury complained of [is] of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm.'" *Pinson v. Pacheco,* 2010 WL 3911348, at *3 (10th Cir. Oct. 7,2010) (unpublished opinion) (quoting *Heideman*, 348 F. 3d at 1189 ). "An irreparable harm requirement is met if a plaintiff demonstrates a significant risk that he or she will experience harm that cannot be compensated after the fact by monetary damages." *Greater Yellowstone Coalition v. Flowers*, 321 F. 3d 1250, 1258 (10th Cir. 2003). "Purely speculative harm will not suffice, but rather, '[a] plaintiff who can show a significant risk of irreparable harm has demonstrated that the harm is not speculative' and will be held to have satisfied his burden." *RoDa Drilling Co. v. Siegal*, 552 F. 3d 1203, 1210 (10th Cir. 2009) (quoting *Greater Yellowstone*, 321 F. 3d at 1258).

Irreparable harm *may* be established where corporate management denies shareholders the right to "vote their shares and to exercise their rightful control over the corporation." *Danaher*

*Corp. v. Chicago Pneumatic Tool Co.,* 1986 WL 7001, at *14 (S.D.N.Y. June 19, 1986) (unpublished opinion) (citations omitted).

In this case, Plaintiff's argument that it will be irreparably harmed if the August 10 shareholder vote is not enjoined rests on the assumption that the shareholders will approve the acquisition. Of course, that result cannot be predicted with certainty at this point in time. In any event, Plaintiff's assertion of irreparable harms also rests on the contention that the acquisition will be detrimental to the shareholders of Continental, an assertion that is not supported by the evidence before the Court. Accordingly, any harm that Plaintiff contends would result from the failure to enjoin the vote is merely speculative and cannot support the extraordinary remedy of a TRO.

Furthermore, Plaintiff has failed to show why monetary damages will not be capable of remedying any harm that might result if it is ultimately determined Defendants breached their fiduciary duties and the shareholders were harmed as a result. As Plaintiff's counsel acknowledged during the hearing, damages could be assessed against Hamm, Hume, or the other defendants if they improperly benefitted from the transaction to the detriment of Continental and its shareholders. Plaintiff's only contention in this regard is that some courts have expressed a preference for remedying such improper conduct before the transaction is implemented. *See ODS Technologies, L.P. v. Marshall*, 832 A. 2d 1254, 1262 (Del. Ch. 2003); *In re Staples, Inc. Shareholders Litigation,* 792 A.2d 934, 960 (Del. Ch. 2001). Although the courts in both cases expressed a preference for resolving a conflict via preliminary relief postponing the scheduled shareholder vote, nothing in these or other decisions cited by Plaintiff establishes a rule that preliminary relief is always required, even if there is a showing of potential success on the merits. In this case, the Court finds Plaintiff has not shown a likelihood of success on the merits or the existence of *irreparable* harm that will

likely result from the August 10 vote. Thus, the Court does not find Plaintiff's contention persuasive under the facts of this case.

### C. Balancing the harm to the movant and the nonmovant:

When balancing the equities among the parties, the Court must consider whether the threatened injury to the movant outweighs the potential harm to the defendants if the injunction is granted. *See, e.g., Kikumura v. Hurley*, 242 F. 3d 950, 955 (10th Cir. 2001).

In the instant case, Continental argues that injunctive relief resulting in a delay of the August 10, 2012 shareholder vote would be harmful because the terms of the purchase agreement between Continental and Wheatland provide that either party has the right to terminate the agreement on or after August 15, 2012. Therefore, if no vote occurs prior to that time, the transaction will not be consummated, and there is a risk of significant harm. In contrast, Plaintiff's assertion of harm if the vote occurs on August 10 is based on speculation that the shareholders will approve the proposal and, if so, that some sort of detriment will be suffered by the shareholders that cannot be remedied by monetary damages.

Even if this case is subject to the Tenth Circuit's relaxed standard regarding injunctive relief, the evidence before the Court establishes that the balance of harm does not tip *decidedly* in Plaintiff's favor.

### D. Consideration of the public interest:

A party seeking a preliminary injunction is not required to show that the requested injunctive relief will serve the public interest; rather, it must show the issuance of the injunction would not be adverse to the public interest. *Heideman,* 348 F. 3d at 1188; *Kikumura v. Hurley*, 242 F. 3d 950, 955 (10th Cir. 2001).

In this case, the parties do not focus extensively on this element of injunctive relief. Plaintiff argues that ensuring shareholders have adequate information prior to approving a corporate proposal is in the public interest. Defendants do not dispute that general statement, and the Court does not find this element of significant weight in this case. Indeed, a similar argument can be made that the public interest favors the ability of corporations and shareholders to govern their internal affairs without undue interference in advance of an expression of the will of all eligible shareholders through the voting of their shares.

III. Conclusion:

For the foregoing reasons, the Court finds that Plaintiff has not satisfied its burden necessary to warrant issuance of a TRO. Accordingly, the motion [Doc. No. 11] is DENIED.

Plaintiff's pending Motion for Preliminary Injunction [Doc. No. 51] is set for hearing on August 8, 2012, at 10:00 a.m.[6] Defendants shall file their response briefs no later than noon on August 7, 2012. No reply brief will be allowed.

IT IS SO ORDERED this 3rd day of August, 2012.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE

---

[6] Although the Court's ruling on the motion for TRO will certainly inform the Court in the consideration of Plaintiff's request for preliminary injunction, the Court notes that Plaintiff asserts arguments in support of a preliminary injunction expressly not advanced at the TRO hearing.

16